**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LINKSMART WIRELESS TECHNOLOGY, LLC, | **Case No. 2:08-cv-00264-DF-CE** |
| | **Case No. 2:08-cv-00304-DF-CE** |
| Plaintiff, | **Case No. 2:08-cv-00385-DF-CE** |
| | **Case No. 2:09-cv-00026-DF-CE** |
| v. | |
| | **CONSOLIDATED** |
| T-MOBILE USA, INC., et al. | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

**PLAINTIFF LINKSMART WIRELESS TECHNOLOGY, LLC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

PAGE

I.   BACKGROUND AND NATURE OF CASE ........................................................... 1

II.  APPLICABLE LEGAL PRINCIPLES ................................................................... 2

III. AGREED CLAIM TERMS ................................................................................... 4

IV.  DISPUTED CLAIM TERMS ................................................................................ 4

A.  User IDs:  No Construction Necessary Or "Identification Of The User." ........................ 5

B.  Individualized Rule Set: "Elements Or Conditions Which Apply During A User's Session." .................................................................................................... 7

C.  User's Rule Set: "Elements Or Conditions About The User's Session." ........................ 9

D.  Dial-Up Network Server:  "Server That Is Used To Establish A Temporary Link To A Network." ............................................................................ 10

E.  Redirection Server:  "Server That Controls The User's Access To The Network." ......... 11

F.  Temporarily Assigned Network Address:  "Address That Identifies A User For The Duration Of A Networking Session." ................................................ 12

G.  Processed/Processing:  No Construction Necessary Or "Controlled/Controlling (E.g., Filter, Block, Redirect And The Like) The User's Data." ............................... 14

H.  Control Data Passing: "Control (E.g., Filter, Block, Redirect And The Like) Data Sent." ...................................................................................... 15

I.  Automated Modification:  No Construction Necessary Or "A Change By The System Based On A Condition." ........................................................... 16

J.  Database:  No Construction Necessary Or "One Or More Collections Of Data Held In A Computer." ....................................................................... 18

K.  Correlating/Correlates:  No Construction Necessary ................................................... 19

L.  Modifying At Least A Portion Of The User's Rule Set While The User's Rule Set Remains Correlated To The Temporarily Assigned Network Address:  No Construction Necessary Or "Changing At Least One Of The Elements Or Conditions About The User's Session During The Session." .................................... 21

M.  To Control Passing Between The User And A Public Network: "To Control Data Passing Between The User And A Public Network." ........................................ 22

N.  Location The User Access/Location Or Locations The User Access:  "Location [Or Locations] That The User Accesses." ............................................... 24

## TABLE OF CONTENTS

PAGE

V.   CONCLUSION. ...................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Alcatel USA Sourcing, Inc. v. Microsoft Corp.*,
    Case No. 6:06 CV 499, 2008 U.S. Dist. LEXIS 64351 (E.D. Tex. Aug. 21, 2008) ..........4

*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003).................................................................................3, 8

*Chimie v. PPG Indus., Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005).................................................................................3, 13

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001).................................................................................24, 25

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968 (Fed. Cir. 1999).................................................................................15

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*,
    403 F.3d 1364 (Fed. Cir. 2005).................................................................................15

*Network-1 Sec. Solutions, Inc. v. Cisco Sys.*,
    No. 6:08CV30, 2010 U.S. Dist. LEXIS 12938 (E.D. Tex. Feb. 16, 2010) .................3, 20

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008).................................................................................3, 4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005).................................................................................passim

*ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*,
    No. 6:06-cv-222, 2008 U.S. Dist. LEXIS 40877 (E.D. Tex. May 21, 2008) ...............3, 20

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001).................................................................................3

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996).................................................................................2

**Other Authorities**

A Guided Tour of Relational Databases and Beyond, Mark Levene and George Loizou (1999).19

Comprehensive Networking Glossary and Acronym Guide, Gary Malkin (1995).....................10

McGraw Hill Electronics Dictionary, Neil Sclater & John Markus (6th ed. 1997) ..............10, 19

Netwon's Telecom Dictionary, Harry Newton (13th ed. 1998)................................................19

Plaintiff Linksmart Wireless Technology, LLC ("Linksmart") moves this Court for an order construing certain claim terms from the asserted claims[1] of U.S. Patent No. 6,779,118 (the "'118 patent") (Weiss Decl.[2] Ex. A),

## I.      BACKGROUND AND NATURE OF CASE.

This is an important case involving a fundamental, pioneering invention.

Ko Ikudome and Matthew Yeung are the named inventors on the '118 patent.  Mr. Ikudome has enjoyed a successful career in the Information Technology field and has performed technical consulting work for clients including NASA/JPL, the FBI, the United States Air Force, KPMG, Lockheed-Martin, Australia Submarine Corp, Ernst & Young and Nippon Telegraph & Telephone Corp.

Beginning in late 1996, Messrs. Ikudome and Yeung started Auric Web Systems, Inc.,[3] the original assignee of the '118 patent and Linksmart's parent.  Messrs. Ikudome and Yeung sought to develop products and technology to allow businesses to offer their customers Internet access on a temporary basis, either for profit or as a promotional tool.  In this way, they sought to develop a system that allowed businesses to profit when a user connected to the Internet.  This was a challenge, in part, because the Internet is a passive network meaning that the user must know the exact location of the desired information before it can be retrieved.  *See* Weiss Decl. Ex. B at LS000639.  It was Messrs. Ikudome and Yeung who conceived of a system and method for dynamically redirecting users based on rule sets that could be dynamically modified for each user.  Messrs. Ikudome and Yeung's invention, embodied in the '118 patent, solved the identified problem effectively and inexpensively.  In particular, the invention teaches a system and method for "creating and implementing dynamically changing rules" related to accessing public networks

---

[1] Linksmart is presently asserting claims 1, 5, 12, 15, 16, 17, 19, 22, 23 and 25 of the '118 patent. D.I. 345.

[2]  "Weiss Decl." refers to the Declaration of Andrew D. Weiss in Support of Plaintiff Linksmart Wireless Technology, LLC's Opening Claim Construction Brief, filed concurrently herewith.

[3] Auric renamed itself AuriQ Systems, Inc. in approximately 2000.

as a function of various factors, including input from user and time.  *See. e.g.*, Weiss Decl. Ex. A at 2:61-65.  Auric spent considerable time and resources developing this invention into workable products and began to market it.  Although customers expressed interest in Auric's products, the bursting of the dot-com bubble affected many of Auric's potential customers, and Auric was forced to seek alternative avenues of business.

Today, Messrs. Ikudome and Yeung's invention is used extensively by, among others, Defendants[4] to provide Internet access in retail establishments, hotels, and offices.   This invention is used, for example, when someone tries to access the Internet from a hotel, or a coffee shop.   As the Court undoubtedly has experienced, a person may type in "www.yahoo.com" into the browser, only to be redirected to an authorization page that asks the person to agree to a fee.   Once the person agrees to a fee, the rule set for that person is dynamically changed, allowing that person to access the Internet for a specified period of time.[5] That dynamic redirection is what the claimed inventions are all about.

## II.      APPLICABLE LEGAL PRINCIPLES.

While the Court is clearly familiar with the law as it relates to claim construction, Linksmart highlights for the Court the overriding legal principles that are relevant to claim construction in this matter.  First, "it is well settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e. the patent itself, including the claims, the specification, and, if in evidence, the prosecution history."  *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996).   Second, the danger of reading

---

[4]  The term "Defendants" refers to the current defendants in this consolidated matter: Cisco Systems, Inc., T-Mobile USA, Inc., SBC Internet Services, Barnes & Noble Booksellers, Inc., Wayport, Inc., Mailboxes Etc., Inc., McDonald's Corp., LodgeNet Interactive Corp., Choice Hotels International, Marriott International, Inc., Intercontinental Hotels Group Resources, Inc., Six Continents Hotels, Inc., Best Western International, Inc., iBAHN General Holdings, Corp., Ethostream, LLC, Ramada Worldwide, Inc., Pronto Networks, Inc., and Aptilo Networks, Inc.

[5]  While the invention is often used to redirect to an authorization page for purposes of securing payment, the invention is not limited to instances where the provider charges for access.   The independent claims are aimed at redirection, regardless of whether the provider charges for access.

limitations from the specific embodiments described in the specification must be avoided. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) ("[O]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)). Third, the claims should not be construed to exclude a preferred embodiment. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) ("[A] construction that would not read on the preferred embodiment would rarely if ever be correct and would require highly persuasive evidentiary support." (internal quotations and alterations omitted)).   Fourth, although intrinsic evidence is the best evidence of the meaning of claim terms, if the Court does choose to rely on extrinsic evidence, the Court must be sure to consider the flaws inherent in such evidence while weighing its effect on the intrinsic evidence.  *Phillips*, 415 F.3d at 1318-19 (describing the flaws of relying on extrinsic evidence); *see also Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) ("Extrinsic evidence may never be relied upon, however, to vary or contradict the clear meaning of terms in the claims.").

Defendants may also argue that, based on *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008), all disputed claim elements must be construed beyond their plain and ordinary meaning because Defendants have put the scope of the element at issue.  This Court has repeatedly rejected this argument, however, because a finding that the ordinary meaning is sufficient (and, therefore, no construction is needed) will resolve the dispute as to the claim scope, thereby satisfying the requirements of *O2 Micro*.  *See, e.g.*, *Network-1 Sec. Solutions, Inc. v. Cisco Sys.*, No. 6:08CV30, 2010 U.S. Dist. LEXIS 12938, at *40 (E.D. Tex. Feb. 16, 2010) (rejecting defendants attempt to rewrite claims to reflect the disclosed embodiment and finding that no construction "resolved the parties' dispute" pursuant to *O2*) (Weiss Decl. Ex. C); *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, No. 6:06-cv-222, 2008 U.S. Dist. LEXIS 40877, at *5 (E.D. Tex. May 21, 2008) ("a court may decline to construe a claim term or rely on that term's ordinary meaning if the court resolves the parties' claim-scope dispute and precludes the parties from presenting jury arguments inconsistent with

the court's adjudication of claim scope") (Weiss Decl. Ex. D); *Alcatel USA Sourcing, Inc. v. Microsoft Corp.*, Case No. 6:06 CV 499, 2008 U.S. Dist. LEXIS 64351, at *19-22 (E.D. Tex. Aug. 21, 2008) ("The claims provide the context such that construction of the 'comparing' step is not necessary.") (Weiss Decl. Ex. E); *see also O2 Micro*, 521 F.3d at 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

In an apparent attempt to further non-infringement and invalidity defenses, Defendants' proposed constructions seek to add extraneous limitations to otherwise easily understood terms, exclude disclosed embodiments, and violate other basic principles of claim construction.   These constructions are an invitation to error under the aforementioned standard canons of claim construction.  The Court should reject them and adopt Linksmart's proper constructions.

### III.   AGREED CLAIM TERMS.

The parties have agreed on the following constructions for these terms:

| TERM | AGREED CONSTRUCTION |
|---|---|
| Combination of[6] | two or more of |
| User[7] | Ordinary meaning; no construction is necessary. |
| Redirects/Redirecting[8] | causes [causing] to be sent to a location other than the one requested by the user |
| Authentication Accounting Server[9] | A server that determines whether a user ID is authorized to access the network |

### IV.   DISPUTED CLAIM TERMS.

Although the parties' met and conferred to try to agree on the proper construction of the terms of the '118 patent, 17 terms currently remain in dispute.  Linksmart respectfully submits that many of the terms require no construction and, for the terms that do require construction,

---

[6] "Combination of " appears in asserted claim 15 of the '118 patent.

[7] "User" appears in asserted claims 1, 5, 12, 15, 22, 23 and 25 of the '118 patent.

[8] "Redirects" and "redirecting" appear in asserted claims 5 and 12 of the '118 patent.

[9] "Authentication accounting server " appears in asserted claim 1 of the '118 patent.

that its proposed constructions should be adopted because they are based on the full scope of the intrinsic evidence.

### A.      User IDs:[10]  No Construction Necessary Or "Identification Of The User."

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Ordinary meaning; no construction is necessary.  If necessary:  "identification of the user" | "a unique identification code for a particular person, which is stored in an authentication database" |

The term "user IDs" does not need to be construed.  As agreed by the parties, the term "user" needs no construction.  Thus, the only portion of this term that needs to be construed is the "IDs" portion.  ID, which is common shorthand for identification, is not ambiguous and does not need to be construed.  If the Court, however, feels that a construction is necessary, the Court should adopt Linksmart's proposed construction, which expresses the shorthand "user ID" as the identification of the user.

Defendants, on the other hand, propose a construction that improperly attempts to import at least four additional limitations into the construction.  *See, e.g.*, *Phillips*, 415 F.3d at 1319-1320.  First, Defendants assert that "user IDs" must be unique.  There is no support within the intrinsic evidence for such a limitation.  Indeed, the intrinsic evidence is silent on the uniqueness of "user IDs," and this limitation appears to be nothing more than a limitation designed to support Defendants' non-infringement position.   Second, Defendants' proposed construction requires that "user IDs" be a code but fail to provide any indication of the meaning of the term code.  The intrinsic evidence provides example of "user IDs," such as UserID-2, but does not limit the form "user IDs" can take.  The specification never even uses the term "code."

Third, Defendants introduce the concept of a "particular person."  This limitation, however, is not found within the intrinsic evidence.  Presumably, Defendants will be relying on the following line of the specification: "'user' will often be used as a short hand expression for

---

[10] "User IDs" appears in asserted claim 1 of the '118 patent.

'the person supplying inputs to a computer that is supplying the system **with a particular user ID**.'"  Weiss Decl. Ex. A at 4:28-32 (emphasis added).  The "particular user ID" portion of this line does not, however, support the proposed construction because it describes the user's computer, not the user, and refers to particular user IDs, not particular persons.  There is no requirement in the specification limiting a "user ID" to a specific person.  Indeed, the specification explicitly discloses that the system will "not 'know' who the human being 'user' is at the keyboard of the computer."  *Id.* at 4:26-27.

Fourth, Defendants propose to import the limitation that "user IDs" must be stored in an authentication database.  This limitation has no support within the intrinsic evidence.  The claims do not require that the "user IDs" be stored in an authentication database.  *See, e.g.*, Weiss Decl. Ex. A at claim 1 (requiring the "user ID" to be received by the dial network server and communicated to the authentication accounting server).  The specification similarly does not explicitly limit "user IDs" to being stored in an authentication database.  While the specification does describe an embodiment where a "user ID" (and password) is "checked against information in an authentication database" (Weiss Decl. Ex. A at 3:1-3:3), this description is relevant only to "certain embodiments according to the present invention."  Weiss Decl. Ex. A at 2:65-66.  Neither the specification nor the file history limits "user IDs" to being stored in an authentication database.

For the foregoing reasons, the Court should not construe this term or, in the alternative, should adopt Linksmart's proposed construction.

### B.   Individualized Rule Set:[11] "Elements Or Conditions Which Apply During A User's Session."

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| "elements or conditions which apply during a user's session" | "filtering and redirection rules for a particular user ID, which apply during an authorized session" |

As claim 1 states, an "individualized rule set" is a set of rules that can be used to process "data directed toward the pubic network from one of the users' computers." Weiss Decl. Ex. A at claim 1. Linksmart's proposed construction should be adopted because it is directly and fully supported by the claims and specification. With respect to the meaning of "rule set," the specification clearly describes the term: "The ***rule sets specify elements or conditions about the user's session***." Weiss Decl. Ex. A at 4:41-42 (emphasis added). The term "individualized," to the extent that it is requires any construction at all, is simply used to emphasize that each session connected to the system will have certain elements or conditions that apply to it. *See, e.g.*, Weiss Decl. Ex. A at 4:55-58 ("The Auto-Navi component of the authentication accounting server 204 queries the database for the rule set to apply to each new session"). Thus, Linksmart's proposed construction is fully supported by the intrinsic evidence and should be adopted.

Unlike Linksmart's proposed construction, Defendants' proposed construction fails to find support in the intrinsic evidence and seeks to improperly introduce limitations. The first portion of Defendants' proposed construction, "filtering and redirection rules," is a limitation imported from the specific and is therefore improper. *See, e.g.*, *Phillips*, 415 F.3d at 1319-1320. The specification describes rule sets in a broad sense. For example, the specification discloses that rule sets "may contain data about a type of service which may or may not be accessed, a location which may or may not be accessed, how long to keep the rule set active, under what conditions the rule set should be removed, when and how to modify the rule set during a session, and the like." Weiss Decl. Ex. A at 4:43-47. Rule sets are not limited to filtering and redirection rules, and Defendants' attempt to import such limitations through claim construction should be

---

[11] "Individualized rule set" appears in asserted claims 1, 5, 12 of the '118 patent.

rejected.

Defendants' second proposed limitation, requiring the rules to apply to a "particular user ID," must also fail because it is repetitive and unnecessary.  For example, claim 1 requires that an "individualized rule set" correlate to a user ID.  Weiss Decl. Ex. A at claim 1.  As the claim language explicitly describes the relationship of the user ID to the "individualized rule set," Defendants' proposed limitation is confusing and unnecessary.[12]    Similarly, Defendants' proposed limitation of this term to a particular user ID is also contradicted by the specification that allow for an "individualized rule set" to be common among multiple users.  *See, e.g.*, Weiss Decl. Ex. A at claim 7 ("wherein the database entries for a plurality of the plurality of the users' IDs are correlated with a common individualized rule set"); 4:40-41 (noting rule sets "are unique for each user ID, ***or a group of user ID's***." (emphasis added)).[13]

The last limitation proposed by Defendants, "which apply during an authorized session," improperly imports a limitation from the preferred embodiment – namely, the specific situation where the session is *authorized*.  *See, e.g.*, *Phillips*, 415 F.3d at 1319-1320.  Although the preferred embodiment in the specification does describe a situation where the rule sets are applied after authentication, the intrinsic evidence does not clearly and unambiguously require such a limitation.  None of the claims expressly require that a rule set only apply after the user is "authorized."  Indeed, claim 15 was purposely drafted to apply regardless of whether the user was authorized.  *See, e.g.*, Weiss Decl. Ex. A at claims 1, 15.  Furthermore, the specification repeatedly emphasizes that it is only describing preferred embodiments of the invention and

---

[12] Indeed, if Defendants' proposed construction is inserted into the claim language, the claim element would read:  "…communicates the filtering and redirection rules for a particular user ID, which apply during an authorized session, that correlate[] with the first user ID and the temporarily assigned network address to the redirection server."  Construing the claim to require "rules for a particular user ID…that correlate[] with the first user ID" is repetitive, confusing and inappropriate.

[13] Defendants' have indicated that they intend to rely on extrinsic evidence regarding the meaning of "individualized."  To the extent that this extrinsic evidence contradicts the intrinsic evidence, it must be disregarded.  *Altiris*, 318 F.3d at 1369.  Furthermore, the extrinsic evidence cited by Defendants does not equate "individualized" with "particular."

should not be limiting. *See, e.g.*, Weiss Decl. Ex. A at 3:45 ("In the following embodiments of the invention"); Ex. A at 8:20-26 ("While the operational environment detailed in the preferred embodiment is that of an ISP connecting users to the Internet, it will be clear to one skilled in the art that the invention may be implemented in any application where control over users' access to a network or network resources is needed, such as a local area network, wide area network and the like. Accordingly, neither the environment nor the communications protocols are limited to those discussed."). Finally, Defendants' proposed limitation introduces the term "authorized session," which is neither used nor defined within the intrinsic evidence or Defendants' proposed construction. Defendants' proposed construction is therefore also vague and will likely only lead to further disputes and confusion for the jury.

Accordingly, the Court should adopt Linksmart's proposed construction and reject Defendants' improperly narrow proposed construction.

**C. User's Rule Set:[14] "Elements Or Conditions About The User's Session."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "elements or conditions about the user's session" | "filtering and redirection rules for a particular user which apply during an authorized session" |

The "user's rule set" term is very similar to the "individualized rule set" term and the same arguments apply. The only portion that must be construed is "rule set" because the parties agree that the "user" needs no construction. As discussed above, the intrinsic evidence fully supports the construction that a "rule set" contains elements or conditions about a session. Weiss Decl. Ex. A at 4:41-42 ("The rule sets specify elements or conditions about the user's session.").

Defendants also acknowledge the relatedness of this term with "individualized rule set" and have proposed a similar construction, except they have limited their construction to "a particular user" rather than a "particular user ID." For all of the reasons set forth above regarding "individualized rule set" (Section IV.C) and "user IDs" (Section IV.A), Defendants' proposed

---

[14] "User's Rule Set" appears in asserted claims 15 and 25 of the '118 patent.

construction should be rejected, and the Court should adopt Linksmart's proposed construction.

    **D.**    **Dial-Up Network Server:[15]  "Server That Is Used To Establish A Temporary Link To A Network."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| "server that is used to establish a temporary link to a network" | "A server on the network that receives a connection via a modem, or establishes a connection via a modem, where the modem dials a phone number over a telephone line." |

"Dial-up network server" should be construed as a "server that is used to establish a temporary link to a network."  Unlike Defendants' proposed construction, Linksmart's proposed construction is fully supported by the intrinsic evidence.  Although this term uses the language "dial-up," the inventors expressly gave the term "dial-up network server" a broad meaning.  The inventors specifically disclosed that the connection between the user's computer and the "dial-up network server" was not limited to a connection via a modem:  "The PC 100 first connects to the *dial-up network server* 102.  The connection is *typically* created using a computer modem, *however a local area network (LAN) or other communications link can be employed*."  Ex. A at 3:57-60 (emphasis added).  Defendants' attempt to limit "dial-up network server" to the use of a modem, phone number and telephone line is contradicted by the intrinsic evidence and is therefore improper.  As the inventors described, "dial-up network server" was simply meant to distinguish temporary connections, like dial-up, local area network, and other communications link connections, from permanent connections.[16]

Because Linksmart's proposed construction fully embodies the scope described in the specification, the Court should adopt Linksmart's proposed construction.

---

[15] "Dial-up network server" appears in asserted claim 1 of the '118 patent.

[16] Linksmart's proposed construction is also supported by contemporaneous dictionary definitions of "dial-up" noting that dial-up meant a temporary, as opposed to a permanent, connection. *See, e.g.*, McGraw Hill Electronics Dictionary, Neil Sclater & John Markus 119 (6th ed. 1997) (Weiss Decl. Ex. F) ("dial-up - a temporary connection to a host computer, typically over public telephone lines with a modem."), Comprehensive Networking Glossary and Acronym Guide, Gary Malkin 47 (1995) (Weiss Decl. Ex. G) ("dial-up – "a temporary, as opposed to dedicated, connection between machines established over a standard phone line.").

### E.   Redirection Server:[17]  "Server That Controls The User's Access To The Network."

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "server that controls the user's access to the network" | "a server that causes a user to be sent to a location other than the one requested by the user" |

A "redirection server" should be construed as a "server that controls the user's access to the network."  Linksmart's proposed construction is consistent with the claims and specification. For example, the independent claims of the '118 patent claim a "redirection server" with broad functionality to "process" or "control" data between the user's computer and the public network. *See* Weiss Decl. Ex. A at claims 1, 8, 15, 25.  The dependent claims provide further limitation requiring, for example, that the redirection server allows, redirects or blocks the transmitted data. Weiss Decl. Ex. A at claims 2-6.  The specification also discloses broad functionality for the "redirection server."  *See, e.g.*, Weiss Decl. Ex. A at 4:50-52 (the "redirection server…***controls the user's access to the network***." (emphasis added)); 6:1-3 ("The redirection server 208 programs the rule set and IP address so as to control ***(filter, block, redirect, and the like)*** the user's data as a function of the rule set." (emphasis added)); 4:50-5:9 (describing multiple features of the redirection server, including but not limited to redirection); 2:61-64 ("The present invention allows for creating and implementing dynamically changing rules, to allow the redirection, blocking, or allowing, of specific data traffic for specific users").  Thus, Linksmart's construction is fully supported by the intrinsic evidence and should be adopted.

Defendants' proposed construction, on the other hand, is extremely narrow and does not even encompass the disclosed preferred embodiments.  Defendants' proposed construction limits "redirection server" to redirection functionality.  The claims, however, are not so limiting and claim the "redirection server" as performing other tasks such as blocking and allowing.  Weiss Decl. Ex. A at claims 3, 4.  The specification also discloses the "redirection server" doing tasks beyond Defendants' narrow proposed construction. *See, e.g.*, Weiss Decl. Ex. A at 6:1-3 ("The

---

[17] "Redirection Server" appears in asserted claims 1, 5, 15, 16, 17, 19, 22, 23 and 25 of the '118 patent.

redirection server 208 programs the rule set and IP address so as to control **(filter, block, redirect, and the like)** the user's data as a function of the rule set." (emphasis added)); 4:50-5:9 (describing multiple features of the redirection server).  Because Defendants' proposed limitation of "redirection server" excludes aspects of the preferred embodiments from the claims and specification as described above, Defendants' proposed limitation must be rejected.

Accordingly, the Court should adopt Linksmart's proposed construction.

F.   **Temporarily Assigned Network Address:[18]  "Address That Identifies A User For The Duration Of A Networking Session."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| "address that identifies a user for the duration of a networking session" | "an address assigned to a user only for the duration of an authorized session" |

There are two primary areas of dispute:  (1) whether the address must be assigned by the system and (2) whether the "authorized session" limitation is proper.

With respect to the first area of dispute, the intrinsic evidence shows that the important aspect of the "temporarily assigned network address" is that the address must identify the user during the session.  For example, in claim 15, the user's rule set must be correlated to a "temporarily assigned network address" so that the proper rule set can be utilized for each user. Weiss Decl. Ex. A at claim 15.  The specification further supports that this term is simply meant to be an address that identifies a user while they are connected to the system.  *See, e.g.*, Weiss Decl. Ex. A at 1:34-36 ("For the duration of that session, whenever the user would make a request to the Internet 110 via a gateway 108, the end user would be identified by the temporarily assigned IP address."), 5:62-6:3, 6:33-6:59 (describing an embodiment using IP addresses where the IP address is used to identify data traffic from a user so that the appropriate rule set can applied); *see also* Weiss Decl. Ex. B at LS000652 ("Auto-Navi component (8) captures the dynamic relation between userID and the framed-IP address at the authentication server (3), and sends both to Auto-navigation server (7) in real time.  So that it can manipulate specific user's IP

---

[18] "Temporarily assigned network address" appears in asserted claims 1, 15 and 25 of the '118 patent.

packets selectively.").  Linksmart's proposed construction emphasizing the "temporarily assigned network address" as identifying the user is therefore fully supported by the intrinsic evidence.

Defendants' proposed limitation requiring an address "assigned to a user only" during a session should be rejected because it excludes the preferred embodiment.  Although Defendants' proposed construction implies that the system must assign the address, the specification discloses that a "temporarily assigned network address" can be an address that it temporarily assigned vis-à-vis the session but is otherwise permanently associated with the user's computer.  Weiss Decl. Ex. A at 3:63-4:2 ("other embodiments may employ different communications protocols, and the IP address may also be permanently assigned to the PC 100").  In the embodiment where a temporarily assigned network address is a permanently assigned IP address, the address is temporarily assigned for the session but permanently assigned for a specific computer. Defendants' proposed construction, however, improperly excludes this preferred embodiment. *Chimie*, 402 F.3d at 1377.

Defendants have also disclosed that they intend to rely on statements made in the June 12, 2009 Response submitted by the inventors in the currently pending related application, U.S. Patent Application No. 11/645,924 (the "'924 application").  *See* Weiss Decl. Ex. H at 13-14. These statements are, however, irrelevant.  The prior art being distinguished, U.S. Patent No. 5,708,780 to Levergood ("Levergood"), involved issuing an access pass (a "SID") to certain restricted files after an authentication process.  *See* Weiss Decl. Ex. I at 3:16-20.  In distinguishing Levergood, the inventors noted that Levergood did not teach a "temporarily assigned network address" as disclosed in the pending claims because the "temporarily assigned network address" in the '924 application is temporary vis-à-vis the session.  The database discussed in Levergood, however, was intended to keep persistent information, such as the user's password and demographic information.  Weiss Decl. Ex. H at 13-14; Weiss Decl. Ex. I at 6:60-65.  Defendants' proposed limitation should therefore be rejected.

Defendants' second proposed limitation, to an "authorized session," should also be rejected.  As discussed with respect to the "individualized rule set" term above (Section IV.B),

this limitation is not supported by the intrinsic evidence and should be rejected.  *See, e.g.*, Weiss

Decl. Ex. A at 8:20-26.  Linksmart's construction fully encompasses the intrinsic evidence.

Accordingly, the Court should adopt Linksmart's proposed construction.

**G.      Processed/Processing:[19]  No Construction Necessary Or "Controlled/Controlling (E.g., Filter, Block, Redirect And The Like) The User's Data."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Ordinary meaning; no construction is necessary.<br><br>If necessary:  "controlled/controlling (*e.g.*, filter, block, redirect and the like) the user's data" | "redirected and filtered" |

The terms "processed" and "processing" require no construction.  The terms are used

similarly and, as indicated by the context of the claims and specification, have their ordinary

meanings.  For example, in claim 1, the term "processed" in context reads:  "wherein data

directed toward the public network from the one of the users' computers are ***processed*** by the

redirection server according to the individualized rule set."  Weiss Decl. Ex. A at claim 1

(emphasis added). The specification further supports that these claim terms do not need to be

construed by noting that the system can "process" data in a number of ways, including

"filter[ing], ***block[ing]***, redirect[ing], ***and the like***."  Weiss Decl. Ex. A at 6:2-3 (emphasis

added); *see also* Weiss Decl. Ex. A at 2:61-63 ("The present invention allows for creating and

implementing dynamically changing rules, to allow the redirection, blocking, or allowing, of

specific data"); 3:15-20 ("The redirection server uses the filter and redirection information

supplied by the authentication accounting server, for that particular IP address, to either allow

packets to pass through the redirection server unmolested, block the request all together, or

modify the request according to the redirection information.").  If the Court determines that this

term needs to be construed at all, the Court should adopt Linksmart's proposed construction,

---

[19] "Processed" appears in asserted claim 1 of the '118 patent.  "Processing" appears in claim 8 of the '118 patent, which is depended on by asserted claim 12.

which is derived directly from the specification.  Weiss Decl. Ex. A at 6:2-3.

Despite the expansive and non-limiting nature of the intrinsic evidence, Defendants' proposed construction improperly limits the "process" terms to two functions:   filtering and redirecting.  Defendants' construction is incorrect for at least two reasons.  First, an independent claim must generally be broader than a claim dependent on it.  *See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("Claim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'" (quoting *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999)).  However, if Defendants' proposed construction is adopted, claim 3 and 4, which are dependent on claim 1 and claim blocking and allowing data, would actually be broader than the independent claim 1, which would only require filtering and redirection under the Defendants' construction.  *See* Weiss Decl. Ex. A at claims 3, 4.  Such a construction is improper.  Second, as discussed above, the specification describes the processing functionality performed by the system to include blocking, allowing, filtering, redirection, and the like.  Weiss Decl. Ex. A at 6:2-3; *see also* Weiss Decl. Ex. A at 2:61-63; 3:15-20.  There is no disclaimer, let alone clear and unambiguous disclaimer, of claim scope to limit processing to filtering and redirection.  The Court should reject Defendants' unsupported limitation of the "process" terms.

Thus, Defendants' argument should be rejected and, if a construction is necessary, the Court should adopt Linksmart's proposed construction.

**H.   Control Data Passing:[20] "Control (E.g., Filter, Block, Redirect And The Like) Data Sent."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| If necessary:  "control (*e.g.*, filter, block, redirect and the like) data sent" | "Filter and redirect data sent" |

This claim term should be construed as: "control (*e.g.*, filter, block, redirect and the like)

---

[20] "Control data passing" appears in asserted claim 25 of the '118 patent.  It also related to the "control passing" portion of claim 15 (as discussed above) and claims 2 and 9 of the '118 patent.

data sent" because this is the construction dictated by the intrinsic evidence.  In context, this term reads:  "wherein the user's rule set contains at least one of a plurality of functions used to ***control data passing*** between the user and a public network."  Weiss Decl. Ex. A at claim 25 (emphasis added).   Defendants propose to introduce the same "filter and redirect" limitation that they proposed with respect to the "processed" and "processing" terms above (Section IV.G).   For the same reasons discussed above, the Defendants' proposed limitations are inappropriate and the Court should find that no construction of this claim term is necessary.  *See, e.g.*, Weiss Decl. Ex. A at 6:2-3 (noting that redirection server may control the user's data in a number of ways, including "filter[ing], ***block[ing]***, redirect[ing], ***and the like***." (emphasis added)); *see also* Weiss Decl. Ex. A at 2:61-63; 3:15-20.  If the Court finds that a construction is necessary, the Court should adopt Linksmart's proposed construction, which is fully supported by the specification.  *See, e.g.*, Weiss Decl. Ex. A at 6:2-3; 3:15-20 ("The redirection server uses the filter and redirection information supplied by the authentication accounting server, for that particular IP address, to either allow packets to pass through the redirection server unmolested, block the request all together, or modify the request according to the redirection information.").

Therefore, Defendants' proposed limitations should be rejected, and Linksmart requests that the Court adopt its proposed construction.

## I.      Automated Modification:[21]  No Construction Necessary Or "A Change By The System Based On A Condition."

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| Ordinary meaning; no construction is necessary.<br><br>If necessary:  "a change by the system based on a condition" | "a change by the system without a request or instruction by a person" |

"Automated modification" is clear within the context of the claims and specification and needs no construction.  The intrinsic evidence does not alter the ordinary meaning and thus no

---

[21] "Automated Modification" appears in asserted claim 15 of the '118 patent.

construction is necessary.  If the Court finds that a construction is necessary, however, the Court should adopt Linksmart's proposed construction as it embodies the full scope of the intrinsic evidence.  The parties agree that this term refers to "a change by the system" but disagree as to the remaining portions of the construction.  Linksmart's proposed construction is derived directly from the specification and should be adopted.  The specification discloses that rule sets are modified as a result of conditions.  *See, e.g.*, Weiss Decl. Ex. A at 4:59-66 ("The redirection server….dynamically chang[es] the rule sets based on conditions"); *see also* 4:42-47 ("Rule sets may contain data about…when and how to modify the rule set during a session"); 5:36-42 (describing a situation where the rule set is automatically modified when the user fulfills the condition of visiting a specified location); 7:31-45 (same).

While Linksmart's proposed construction is based on the intrinsic evidence, Defendants' proposed construction fails to account for this evidence and instead introduces limitations regarding requests or instructions by a person.  This importation of limitations is inappropriate.  Defendants' proposed construction should also be rejected because it implies that an "automated modification" cannot be satisfied where a user's action caused the modification.  This is clearly not what is described in the '118 patent.  For example, claim 15 allows the "automated modification" of rule sets based on, among other things, "data transmitted to or from the user, or location the user access[ed]."[22]  These actions by the user could be considered a request or instruction by a person to change the rule set and would therefore not be an "automated modification" using Defendants' proposed construction.  A construction that is inconsistent with the other requirements of the claim should not be adopted if there are more plausible constructions.  *See, e.g.*, *Phillips*, 415 F.3d at 1314-15.

For the foregoing reasons, the Court should find that no construction is necessary or, if a construction is necessary, should adopt Linksmart's proposed construction.

---

[22] "Location the user access" is addressed below.

**J.     Database:[23]  No Construction Necessary Or "One Or More Collections Of Data Held In A Computer."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Ordinary meaning; no construction is necessary.<br><br>If necessary:  "one or more collections of data held in a computer" | "a collection of relations embodied in tables with rows and columns that represent data items" |

The term "database" is a common term and its ordinary meaning, as understood by one of ordinary skill in the art, should apply.  There is nothing within the intrinsic evidence that altered the ordinary meaning of this term.  If the Court finds that this term should be construed, Defendants' narrow and confusing construction should be rejected.   Defendants' proposed construction appears to be an attempt to describe a relational database, which is described as being used in the preferred embodiment described in the specification.  Weiss Decl. Ex. A at 4:33-34 ("The database 206 [in FIG. 2] is a relational database which stores the system data."). The specification is clear, however, that it is only describing preferred embodiments and is not meant to be limiting.  *See, e.g.* Weiss Decl. Ex. A at 3:37-40 ("FIG. 2 is a block diagram of an *embodiment* of an Internet Service Provider environment with integrated redirection system." (emphasis added); 3:45 ("In the following embodiments…."); 8:20-27 ("While the operational environment detailed in the preferred embodiment is that of an ISP connecting users to the Internet…neither the environment nor the communications protocols are limited to those discussed.").  There is no clear and unambiguous statement by the inventors limiting the meaning of database to a relational database.  Indeed, the intrinsic evidence discloses a broad meaning for database.  For example, the provisional application emphasizes the broad nature of database by further disclosing that the database could be a mere text file.  *See, e.g.*, Weiss Decl. Ex. B at LS000642 ("Consults database (or flat file)"); LS000654 ("Consults database (or an ASCII text file)").[24]  For foregoing reasons, the Court should conclude that no construction is needed or, if

---

[23] "Database" appears in asserted claim 1 of the '118 patent.

[24] Defendants' own extrinsic evidence notes that there are a number of types of databases, including relational database.  A Guided Tour of Relational Databases and Beyond, Mark

the Court finds a construction is necessary, it should adopt the proper definition of database proposed by Linksmart.  *See* McGraw-Hill Electronics Dictionary, Neil Sclater & John Markus 110 (6th ed. 1997) ("One or more collections of data, generally stored on magnetic tapes or disks in a form suitable for computer processing.  It is also called a *data base*.") (Weiss Decl. Ex. F); Newton's Telecom Dictionary, Harry Newton 194 (13th ed. 1998) ("A collection of data structured and organized in a disciplined fashion so that access is possible quickly to information of interest…Databases are stored on computers in different ways.") (Weiss Decl. Ex. J).

Additionally, Defendants' proposed construction lacks support within the intrinsic evidence.  The intrinsic evidence does not use terms such as "relations," "tables," and "data items."  These terms are derived directly from Defendants' extrinsic evidence and would only likely confuse a jury.  Limiting the scope of "database" in the '118 patent would erroneously import a limitation into the claims from an embodiment in the patent, and adopting the Defendants' construction would compound that error by relying on extrinsic evidence that contradicts the intrinsic evidence

Accordingly, if the Court finds that "database" must be construed, the Court should adopt Linksmart's proposed construction.

### K.      Correlating/Correlates:[25]  No Construction Necessary.

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
| --- | --- |
| Ordinary meaning; no construction is necessary. | "associating two or more data items through relations embodied in a database" |

Although Defendants have only proposed to construe "correlating" and "correlates," "correlated" is also used by the claims, and all three forms of the term should be understood consistently.  Linksmart does not believe that these terms need to be construed because the ordinary meaning is sufficient.  Outside of the claims, the patent never uses any form of

---

Levene and George Loizou 2 (1999) (noting that the "database concept has been evolving for well over thirty years" and referring to at least 3 different types of database) (Weiss Decl. Ex. K).

[25] "Correlating" and "correlates" appear in asserted claims 1, 15 and 25 of the '118 patent.

"correlate" and has not offered any meaning for the terms other than their ordinary meanings.  As discussed above, a finding of no construction is sufficient and appropriate.  *See, e.g.*, *Network-1*, 2010 U.S. Dist. LEXIS 12938, at \*40; *ReedHycalog*, 2008 U.S. Dist. LEXIS 40877, at \*5.

Defendant's proposed construction should be rejected because it is contradicted by the intrinsic evidence and is vague.  Defendants' proposed construction is a transparent attempt to import a database limitation into claims where no such limitation exists.  While claim 1 uses "correlating" in the context of a database, other instances of these terms are not related to database.  For example, claim 15 uses the term "correlated" to describe the rule sets programmed into the redirection server, but does not mention a database.  Weiss Decl. Ex. A at claim 15.  In fact, as evidenced by Figure 2, the embodiment of the invention described in the specification shows a redirection server that is not even directly connected to a database.  Weiss Decl. Ex. A at Fig. 2.  Similarly, the provisional application also does not disclose the redirection server being connected to a database.  *See, e.g.*, Weiss Decl. Ex. B at LS000652, Figure 3.  It is improper to construe claim language to exclude preferred embodiments.[26]   Additionally, Defendants' construction of the "correlate" terms should not be adopted because it is vague and only raises further questions and uncertainty.  For example, what does "associating" mean?  What are data items?  Defendants' construction should therefore be rejected.

Thus, the Court should find that these terms need no construction.

---

[26] As discussed above in Section IV.J, even if a database limitation is appropriate, Defendants' attempt to limit the database to a relational database is inappropriate.

**L.      Modifying At Least A Portion Of The User's Rule Set While The User's Rule Set Remains Correlated To The Temporarily Assigned Network Address:[27] No Construction Necessary Or "Changing At Least One Of The Elements Or Conditions About The User's Session During The Session."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' CONSTRUCTION |
|---|---|
| Ordinary meaning; no construction necessary in light of other constructions.<br><br>If necessary: "changing at least one of the elements or conditions about the user's session during the session" | "changing at least one of the rules in the user's rule set without ending the authorized session" |

This claim phrase is clear and needs no construction.  It appears that Defendants have requested that this term be construed in an attempt to improperly import limitations to support their non-infringement and invalidity positions.  If the Court finds that this phrase needs to be construed, Linksmart asserts that its proposed construction should be adopted.  The parties agree that modifying means "changing" but differ on the proper construction of the remainder of the phrase.

Linksmart's proposed construction incorporates its proposed construction of "user's rule set" (Section IV.C above) and the intrinsic evidence and should therefore be adopted. "Modifying at least a portion of" is clear as written and simply refers to changing one of the elements or conditions in the rule set.  The remaining portion of the disputed phase ("while the user's rule set remains correlated to the temporarily assigned network address") means that the rule set is being modified while the user is still connected to the system in an active session. *See, e.g.*, Weiss Decl. Ex. A at 4:46-47 ("when and how to modify the rule set during a session"); 4:66 ("dynamically changing the rule sets based on conditions"); 5:36-41 (describing changing rule sets while the user remains connected); 7:26-45 (describing similar situation); 7:58-8:11 (same).  Linksmart's proposed construction is therefore appropriate.

Defendants' proposed construction, on the other hand, appears designed support their litigation positions  rather  than  provide  a  proper  construction.    Most  notably,  Defendants'

---

[27] "Modifying at least a portion of the user's rule set while the user's rule set remains correlated to the temporarily assigned network address" appears in asserted claim 25 of the '118 patent.

proposed construction appears to ignore the other claim constructions it has proposed. Indeed, although the term "correlate" is used in this phrase, Defendants proposed construction for this phrase notably does not include its proposed construction for term "correlate." This inconsistency both supports Linksmart's argument with respect to "correlate" terms and dooms the Defendants' construction of the claim phrase here. In addition, Defendants' proposed construction is also improper because they again attempt to import the "authorized session" limitation into the claims. As discussed above in Section IV.B, this is inappropriate.

For the foregoing reasons, Defendants' proposed construction is incorrect. The Court should conclude that this claim phrase requires no construction, or, alternatively if it believes that construction is necessary, the Court should adopt Linksmart's proposed construction.

**M.      To Control Passing Between The User And A Public Network:[28] "To Control Data Passing Between The User And A Public Network."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' POSITION |
|---|---|
| "to control data passing between the user and a public network" | indefinite |

Within the context of the claims and the specification, the meaning of this term is clear and says just what it means – controlling the passing between the user and public network. Defendants argue that the claim is indefinite because the claim refers to passing, but does not say what it passed. Defendants' argument fails. The claim is aimed at controlling passing between the user and the public network. What is passed is immaterial – the invention is aimed at controlling the passing of information regardless of what is passed. One of skill in the art would clearly understand this based on the intrinsic record.

The specification makes clear that the invention is aimed at controlling the passing of data or information, regardless of what that data is. For example, the specification talks about controlling the passing of:

- Data. *See, e.g.*, Weiss Decl. Ex. A at 6:1-3 ("so as to control (filter, block, redirect,

---

[28] "To control passing between the user and a public network" appears in asserted claim 15 of the '118 patent.

and the like) the user's data as a function of the rule set"); 6:4-59 (describing an example showing the controlling of data passing between the user and the Internet); and

- Packets[29] (*i.e.*, data).  *See, e.g.*, Ex. A at 3:15-20 ("The redirection server uses the filter and redirection information supplied by the authentication accounting server, for that particular IP address, to either allow packets to pass through the redirection server unmolested, block the request all together, or modify the request according to the redirection information.").

The file history also supports Linksmart's construction.  The original claim 15 submitted to the PTO stated: "wherein the rule set contains at least one of a plurality of functions used to **control the user's data**" (emphasis added).  Weiss Decl. Ex. B at LS000045.  This language was then amended to further clarify that it was the passing of the information that was being controlled, not the data itself.  Weiss Decl. Ex. B at LS000099.  Thus, the file history further supports Linksmart's construction, and provides further context for one of skill in the art's understanding of the phrase.

Further, during the prosecution of the application that led to the '118 patent, the applicant argued that Claim 15 should be allowed over the prior art because it recites "wherein the rule set contains at least one of a plurality of functions used to *control passing between the user and a public network*" and the prior art "contains no express or inherent teaching or suggestion of . . . a rule set with functions used to control passing between the user and a public network."  Weiss Decl. Ex. B at LS000148 (emphasis added).  That this language was clear to the examiner, who subsequently allowed the claims, provides further evidence that it would be understood by one of skill in the art.

Other claims also support Linksmart's construction and provide further context for one of skill in the art.  For example, claim 25, which claims a method similar to the system claimed in

---

[29] Information or data sent over a network is broken into "packets."

claim 15, expressly discloses "a plurality of functions used to control **data** passing between the user and a public network."  Weiss Decl. Ex. A at preamble of claim 25 (emphasis added).

The meaning of this language would, therefore, be apparent to one of ordinary skill in the art in light of the intrinsic evidence and is not indefinite.  *See Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  One of skill in the art reading the claims in light of the specification and file history would clearly understand that the phrase "to control passing between the user and a public network" refers to controlling the passing of any data or information between the user and a public network.  As a result, Defendants' claim of indefiniteness should be denied, and the Court should construe this term as "to control data passing between the user and a public network."

**N.    Location The User Access/Location Or Locations The User Access:**[30] **"Location [Or Locations] That The User Accesses."**

| LINKSMART'S CONSTRUCTION | DEFENDANTS' POSITION |
| --- | --- |
| "location [or locations] that the user accesses" | Indefinite |

Defendants apparently contend that Claim 15 should be held indefinite as a matter of law because of an insignificant grammatical error – the claim refers to the "location the user access" (instead of the location the user accesses).  While perhaps not grammatically perfect, the meaning is certainly clear, both on its face and particularly in light of the claim and specification. The specification expressly discloses that the rule sets contain rules related to the location or locations accessed by the user.  *See, e.g.*, Weiss Decl. Ex. A at 4:42-47 ("Rule sets may contain data about…a location which may or may not be accessed"); 4:35-39 ("The database, in the preferred embodiment, including the following fields:…the locations each user is allowed to access").  The specification also expressly discloses that rule sets may be modified based on the locations accessed by the user.  *See, e.g.*, Weiss Decl. Ex. A at 7:48-52 ("In an alternate embodiment a user may be periodically redirected to a location, based on the number of other

---

[30] "Location the user access" and "Location or locations the user access" appear in asserted claims 15 and 22 of the '118 patent.

factors, such as the number of locations accessed, the time spent at a location, the types of locations accessed, and other such factors.").  This phrase is not unintelligible within the context of the intrinsic evidence, and Defendants' argument must fail.  *See Exxon Research*, 265 F.3d at 1375.  Accordingly, Linksmart respectfully requests the Court to construe the phrase as one of skill in the art would understand it – "location [or locations] that the user accesses."

## V.    CONCLUSION.

Linksmart's proposed constructions are solidly based on intrinsic evidence, and are appropriately consistent with extrinsic evidence.  In contrast, Defendants' proposed constructions improperly seek to import unwarranted limitations into the claims, exclude preferred embodiments, and violate the basic structure of the dependent claims.  For all of the foregoing reasons, Linksmart respectfully submits that its proposed constructions and proffered meanings be adopted by this Court.

Dated: March 19, 2010                    Respectfully submitted,

By:___/s/ Andrew D. Weiss_____
Marc A. Fenster, California State Bar No. 181067
E-mail: mfenster@raklaw.com
Alexander C.D. Giza, California State Bar No. 212327
Email: agiza@raklaw.com
Andrew D. Weis, California State Bar No. 232974
E-mail: aweiss@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Telephone:     (310) 826-7474
Facsimile:     (310) 826-6991

Andrew Wesley Spangler
SPANGLER LAW PC
104 E Houston Street, Suite 135
Marshall, TX 75670
Telephone: 903/935-3443
Facsimile: 903/938-7843
Email: spangler@spanglerlawpc.com

**Attorneys for Plaintiff**
**Linksmart Wireless Systems, LLC**

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 19, 2010.  Any other counsel of record will be served via First Class U.S. Mail on this same date.

By:    /s/ Andrew Weiss