**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LINKSMART WIRELESS TECHNOLOGY, LLC, | § § § | **Case No. 2:08-cv-00264-DF-CE** |
| Plaintiff, | § § | **Case No. 2:08-cv-00304-DF-CE** |
| | § | **Case No. 2:08-cv-00385-DF-CE** |
| v. | § | **Case No. 2:09-cv-00026-DF-CE** |
| | § | |
| T-MOBILE USA, INC., et al., | § § | **CONSOLIDATED** |
| Defendants. | § § § | |

# DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.'S
# MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT .................... 2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 2

IV. ARGUMENT .................................................................................................................. 5
    A. No Direct Infringement By Choice ................................................................. 5
    B. No Inducement of Infringement By Choice .................................................. 7

V. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Black & Decker (US) Inc. v. Catalina Lighting, Inc.*,
 953 F. Supp. 134 (E.D. Va. 1997) ....................................................................................... 10

*Deep Nines, Inc. v. McAfee, Inc.*,
 No. 06-CV-174, 2008 U.S. Dist. LEXIS 52649 (E.D. Tex. June 18, 2008) .......................... 9

*DSU Medical Corp. v. JMS Co., Ltd.*,
 471 F.3d 1293 (Fed. Cir. 2006) .................................................................................. 8, 9, 10

*epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*,
 492 F. Supp. 2d 608 (E.D. Tex. 2007) ................................................................ 7, 8, 11, 12

*epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*,
 644 F. Supp. 2d 806 (E.D. Tex. 2008) ............................................................................ 6, 13

*Fujitsu Ltd. v. Netgear, Inc.*,
 No. 07-CV-710, 2009 U.S. Dist. LEXIS 85802 (W.D. Wis. Sept. 18, 2009) ...................... 11

*Joy Technologies, Inc. v. Flakt, Inc.*,
 6 F.3d 770 (Fed. Cir. 1993) ................................................................................................... 6

*Kyocera Wireless Corp. v. ITC*,
 545 F.3d 1340 (Fed. Cir. 2008) ....................................................................................... 8, 12

*Linksmart Wireless Tech., LLC v. TJ Hospitality Ltd.*,
 No. 10-CV-277 (E.D. Tex. filed July 29, 2010) ................................................................... 1

*Manville Sales Corp. v. Paramount Systems, Inc.*,
 917 F.2d 544 (Fed. Cir. 1990) ........................................................................................... 7, 8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
 545 U.S. 913 (2005) ........................................................................................................... 7, 8

*Mini Maid Services Co. v. Maid Brigade Systems, Inc.*,
 967 F.2d 1516 (11th Cir. 1992) ........................................................................................... 11

*Muniauction, Inc. v. Thomson Corp.*,
 532 F.3d 1318 (Fed. Cir. 2008) ............................................................................................. 6

*Oak Industries, Inc. v. Zenith Electronics Corp.*,
 697 F. Supp. 988 (N.D. Ill. 1988) ......................................................................................... 9

*R2 Medical Systems, Inc. v. Katecho, Inc.*,
 931 F. Supp. 1397 (N.D. Ill. 1996) ..................................................................................... 13

*Rotec Industries, Inc. v. Mitsubishi Corp.*,
 215 F.3d 1246 (Fed. Cir. 2000) ............................................................................................. 5

*Veritas Operating Corp. v. Microsoft Corp.*,
 562 F. Supp. 2d 1141 (W.D. Wash. 2008) .......................................................................... 13

*Warner-Lambert Co. v. Apotex Corp.*,
 316 F.3d 1348 (Fed. Cir. 2003) ................................................................................... 11, 13

*Water Technologies Corp. v Calco, Ltd.*,
 850 F.2d 660 (Fed. Cir. 1988) ............................................................................................ 9

**STATUTES**

35 U.S.C. § 271(a) ................................................................................................................. 1, 5
35 U.S.C. § 271(b) .................................................................................................................... 7

**I.     Introduction**

Defendant Choice Hotels International, Inc. ("Choice") moves for summary judgment of non-infringement of all the asserted claims in this case. Choice's proposed summary judgment motion is not contingent on the Court's recent claim construction or the validity of any asserted claims. Choice simply does not perform any act that would constitute infringement – regardless of the scope or validity of the claims.

Choice is a separate legal entity from its franchisees that provide the internet-related services accused of infringement in this case – a fact which Plaintiff cannot dispute. The franchised hotels are not operated by Choice and are not parties to this action. Plaintiff simply brought this case against the wrong legal entity. Indeed, Plaintiff tacitly admitted as much when it filed its July 29, 2010 Complaint now accusing, among others, at least one entity that owns a Choice franchised hotel of the same infringing activity alleged against Choice. *See Linksmart Wireless Tech., LLC v. TJ Hospitality Ltd.*, No. 2:10-cv-00277 (E.D. Tex.) ("Franchised Hotel Litigation").

Thus, the undisputed facts establish that Choice is <u>not a direct infringer</u> of any claims of the patent-in-suit, U.S. Patent No. 6,779,118 (the "'118 patent"), because Choice does not make, use, sell, offer for sale, or import a system or product covered by the claimed invention. *See* 35 U.S.C. § 271(a). Choice cannot be liable as a direct infringer for the actions of (a) its franchised hotels – which are independently-operated – or (b) the third-party service vendors who provide guests at the franchised hotels with internet access. Likewise, Choice is <u>not an indirect infringer</u>. Plaintiff simply has no evidence sufficient to establish the requisite "intent" for inducement, and Plaintiff does not assert contributory infringement.

Accordingly, Linksmart's infringement allegations are ripe for summary disposition – finding as a matter of law that Choice does not infringe any asserted claims of the '118 patent.

**II.     Statement of the Issue to be Decided by the Court**

The sole issue to be decided by the Court is whether, as a matter of law, Choice neither directly nor indirectly infringes any of the asserted claims of the '118 patent.

**III.    Statement of Undisputed Material Facts**

1. Linksmart has asserted that Choice directly infringes the asserted claims of the '118 patent and actively induces infringement of the '118 patent, which issued on August 17, 2004. *See* Linksmart's Objections and Responses to Defendant Choice Hotels International, Inc.'s First Set of Interrogatories to Plaintiff (Ex. 1) at 4-6.

2. Linksmart's infringement allegations are based entirely on the activities of Choice franchised hotels and/or vendors who provide internet access to the franchised hotels' guests. *See id.*; Linksmart Wireless Technology, LLC's Disclosure of Asserted Claims and Infringement Contentions Against Defendants, with attached Choice Exhibit (Ex. 2).

3. Choice franchised hotels are independently-operated and are not parties to this litigation. *See* July 27, 2010 Deposition Transcript of Frederick H. Summa, III ("Summa Dep.") (Ex. 3) at 105:25-106:2.

4. Prior to the filing of the Complaint in July 2008, Choice was not aware of the '118 patent. Choice Hotels International, Inc.'s Objections and Responses to Plaintiff's First Set of Common Interrogatories at 11 (Verified Response to Interrogatory No. 6) (Ex. 4).

5. Specifically, Linksmart alleges that "Choice mandates that its franchisees must provide High Speed Internet Access (HSIA)." Ex. 1 at 6.

6. Providing Internet access was known in the prior art before Linksmart filed the application that became the '118 patent, as the inventors acknowledged in the Background of the Invention of the patent, and subsequently confirmed in deposition. *See, e.g.*, '118 patent, col. 1:16-28, Figure 1 (Ex. 5) ("In prior art systems as shown in FIG. 1 when an Internet user

establishes a connection with an Internet Service Provider …."); July 1, 2010 Deposition Transcript of Koichiro Ikudome at 636:3-5 (Ex. 6) ("Q: You've already agreed that you didn't invent providing users with access to the internet, correct? A: Yes.").

7. Linksmart also alleges that "Choice has entered into various 'strategic alliance agreements' with vendors to provide HSIA products and services to Choice franchisees. Pursuant to these strategic alliance agreements, Choice expressly requires the HSIA systems provided by these vendors to have a 're-directional link to a start page.'" Ex. 1 at 6 (internal citations omitted).

8. The vendors that provide HSIA products and services to Choice franchisees are independent legal entities from defendant Choice. *See, e.g.*, April 1, 2004 Choice-EthoStream Strategic Alliance Agreement (Ex. 7) at CHI 2028 ("This Agreement does not make the parties partners, joint venturers, or agents of one another. Both parties are acting as independent contractors.").

9. Choice entered Strategic Alliance Agreements with vendors to provide HSIA products and services to Choice franchisees before the '118 patent ever issued. *See* Ex. 7; April 2, 2004 Choice-Guest DSL Strategic Alliance Agreement (Ex. 8); April 1, 2004 Choice-Engineered Wireless Strategic Alliance Agreement (Ex. 9).

10. Those agreements that existed prior to the '118 patent's issuance also expressly provided that the vendor include a "re-directional link to a 'Start Page'." Ex. 7 at CHI 2033; Ex. 8 at CHI 2095; Ex. 9 at CHI 2019.

11. Linksmart further alleges that "Choice mandates that the franchisees' HSIA systems must be configured to present the guest with a terms of service page that the guest must accept prior to being permitted to use the HSIA service and further mandates that once the

guest accepts the terms of service, they are re-directed to a start page. According to the Choice rules and regulations, this start page must be displayed as the gateway to the Internet and must contain certain information, such as hotel information." Ex. 1 at 6.

12. As early as 2006, more than two years before Choice became aware of the '118 patent, the Choice brand rules and regulations already included the provision that a hotel guest first receive a terms of service page before being re-directed to a start page. *See, e.g.*, 2006 Quality Rules and Regulations Manual (Ex. 10) at CHI 5406; 2006 Sleep Inn Rules and Regulations Manual (Ex. 11) at CHI 5553; Statement of Undisputed Material Fact ("SUMF") 4.

13. Redirection of users' Internet access also was known in the prior art, as the inventors acknowledged in the Background of the Invention of the '118 patent. *See, e.g.*, '118 patent, col. 1:37-67 (Ex. 5) ("The redirection of Internet traffic is most often done with World Wide Web (WWW) traffic (more specifically, traffic using the HTTP (hypertext transfer protocol)). However, redirection is not limited to WWW traffic, and the concept is valid for all IP services …. One disadvantage with the current redirection technology is that control of the redirection is at the remote end, or WWW server end – and not the local, or user end. That is to say that the redirection is performed by the remote server, not the user's local gateway.").

14. The '118 claims do not cover all redirection servers; nor any and all methods/processes for redirecting users' Internet access. *See, e.g.*, '118 patent, col. 8:27-10:61 (Ex. 5).

15. Specifically, the claims asserted by Linksmart (claims 1, 5, 12, 15-17, 19, 22, 23 and 25)[1] each require a specific "redirection server" (a) such that "data directed toward the public network from the one of the users' computers are processed by the redirection server according to the individualized rule set" (claim 1) and that further "redirects the data to and from the users' computers as a function of the individualized rule set" (claim 5)[2] or (b) "containing a user's rule set correlated to a temporarily assigned network address wherein the user's rule set contains at least one of a plurality of functions used to control data passing between the user and a public network" where the method "includes the step of receiving instructions by the redirection server to modify at least a portion of the user's rule set through one or more of the user side of the redirection server and the network side of the redirection server" (claim 25). '118 patent, col. 8:27-10:61 (Ex. 5).

## IV.     Argument

As set forth below, the undisputed facts establish that Linksmart's direct and indirect infringement claims against Choice are ripe for summary adjudication in Choice's favor.

### A.     No Direct Infringement By Choice

With respect to direct infringement, there can be no infringement of a system or apparatus claim (*i.e.*, asserted claims 1, 5, 15-17, 19, 22, and 23) if a party does not make, use, sell, offer for sale, or import a system or product covered by the claimed invention. *See* 35 U.S.C. § 271(a); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000)

---

[1]     The Court found claims 15-17, 19, 22 and 23 invalid as indefinite. Dkt. No. 495, at 1. These claims also claim specifically-defined redirection servers in light of the prior art.

[2]     Claim 12 is the method claim that mirrors system claim 5, requiring the "step of redirecting the data to and from the users' computers as a function of the individualized rule set." '118 patent, col. 9:33-35 (Ex. 5).

(citing 35 U.S.C. § 271(a)). Likewise, where a patent claim is directed to a method, rather than an apparatus – as in asserted claims 12 and 25 here – the Federal Circuit has explained that the method claim is directly infringed only where the method is <u>actually performed by the party accused of direct infringement</u>. *See*, *e.g.*, *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008) ("The law of this circuit is axiomatic that a method claim is directly infringed only if each step of the claimed method is performed.").

It is axiomatic that an accused infringer, such as Choice, cannot be liable for direct infringement under § 271(a) for a third-party's (*e.g.*, a franchised hotel or internet access vendor) activity. *See*, *e.g.*, *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is *directly* infringed only by one practicing the patented method.") (emphasis in original); *epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 644 F. Supp. 2d 806, 817-21 (E.D. Tex. 2008) (finding no direct infringement by defendant where control of the accused system was exercised solely by a third-party web hosting company) ("*epicRealm II*").

Linksmart's infringement contentions against Choice and its subsequent interrogatory answer fail to identify any system/product made, used, sold, offered for sale or imported by Choice itself; nor has Linksmart identified any allegedly infringing activity by Choice. Instead, Linksmart's infringement contentions are based entirely on systems provided by third-party HSIA vendors and/or the activities of (i) such vendors and (ii) Choice's franchised hotels. SUMF 2. Both the internet service vendors and Choice franchised hotels are separate legal entities from defendant Choice. SUMF 3, 8. Linksmart has been aware – from nearly the outset of this litigation – that as a result, the franchised hotels are not parties to this litigation. Linksmart only now tacitly admits it brought this action against the wrong legal entity in bringing the recently-filed Franchised Hotel Litigation before this Court. Nevertheless,

Linksmart has maintained its direct infringement claims against Choice. Linksmart has no basis for doing so, and Choice is entitled to summary judgment of no direct infringement.

### B. No Inducement of Infringement By Choice

Linksmart's indirect infringement allegations are equally ripe for summary disposition in Choice's favor. In the present case, Linksmart relies solely on inducement of infringement claims against Choice and has made no claims of contributory infringement. *See* SUMF 1. Linksmart's inducement case fails because Choice lacks the requisite intent for at least two separate reasons. First, there are admittedly non-infringing alternatives for internet access that include redirection and "there can be no liability for active inducement when the actions alleged to induce infringement could also lead to noninfringing activity, and there is no encouragement of the infringing activity in particular." *epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 639 (E.D. Tex. 2007) ("*epicRealm I*"). Second, Choice does not dictate, and is not a party to, the specific selection of internet providers by the franchisee hotels.

Inducement of infringement has been codified in § 271(b), which provides that "[w]hoever <u>actively</u> induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b) (emphasis added). Because, by statute, inducement of infringement must be active, "[i]t must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). The Supreme Court affirmed that inducement requires active steps on the part of the accused infringer in the seminal case of *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). In analogizing the patent law doctrine of inducement to copyright law,

the Supreme Court noted that inducement requires "[e]vidence of active steps taken to encourage direct infringement" because of "the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use," even if infringing uses are also possible. *Id*. at 936.

It is therefore black letter law that "[t]o prevail on inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008) (internal citations omitted). Thus, even if Linksmart can show direct infringement by the independently-operated Choice franchised hotels or third-party vendors that provide internet access to those franchised hotels, Linksmart will still fail to establish inducement of infringement if – as here – it cannot satisfy the specific intent requirement.

Indeed, even when the underlying act of direct infringement is shown, the second prong of inducement – proving specific intent to induce infringement – remains a high hurdle to clear. As the Federal Circuit explained *en banc* in *DSU Medical Corp. v. JMS Co., Ltd.*, "the plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." 471 F.3d 1293, 1304 (Fed. Cir. 2006) (quoting *Manville*, 917 F.2d at 554). "The requirement that the alleged infringer knew or should have known his actions would induce actual infringement <u>necessarily includes the requirement that he or she knew of the patent</u>." *Id.* at 1304 (emphasis added); *epicRealm I*, 492 F. Supp. 2d at 639 (citing *DSU Medical*). It is undisputed, however, that prior to the filing of this lawsuit in July 2008, Choice had no knowledge of the '118 patent. SUMF

4. Accordingly, on that basis alone Choice cannot be liable for inducing infringement prior to July 2008.

Moreover, even after Choice was sued in this litigation, to establish inducement of infringement, Linksmart must prove that Choice "actively and *knowingly* aid[ed] and abett[ed] another's direct infringement." *DSU Medical*, 471 F.3d at 1305 (quoting *Water Techs. Corp. v Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)) (emphasis in original); *Deep Nines, Inc. v. McAfee, Inc.*, No. 06-CV-174, 2008 U.S. Dist. LEXIS 52649, at *9 (E.D. Tex. June 18, 2008) (citing *DSU Medical*). "Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical*, 471 F.3d at 1306; *see also Oak Indus., Inc. v. Zenith Elecs. Corp.*, 697 F. Supp. 988, 994 (N.D. Ill. 1988) ("The supplier of a staple will be liable for active inducement if it tells its purchaser, 'Here is how we can help you infringe.'"). "The mere knowledge of possible infringement by others does not amount to inducement," rather, "specific intent and action to induce infringement must be proven." *DSU Medical*, 471 F.3d at 1305 (internal citations omitted).

Linksmart has no such evidence of specific intent. As an initial matter, all the evidence upon which Linksmart relies in alleging a specific intent to infringe existed at Choice years before it had any knowledge of the patent. With respect to the third-party HSIA vendor agreements that specify that the vendors will include a "re-directional link to a start page" in connection with the franchised hotel properties' service, a number of those agreements were entered by Choice <u>years before it was aware of the '118 patent</u>. SUMF 4, 7, 9. Tellingly, Choice's vendor agreements that <u>predate the issuance of the patent</u> include the same "re-directional link to a start page" provision. SUMF 10. These facts negate that Choice "actively

- 9 -

and knowingly aid[ed] and abett[ed] another's direct infringement," exposing that Linksmart's reliance on such evidence is entirely misplaced. *DSU Medical*, 471 F.3d at 1305.

In considering the HSIA vendor agreements, it is also important to understand that Choice is not a party to the agreements subsequently entered between the vendors and the independently-operated franchised hotels. These HSIA vendors become "qualified" by Choice, but deal directly with the independent franchised hotels to provide products/services that enable hotel guests to connect to such internet service as is available at individual, independently-operated Choice franchised hotels. *See, e.g.*, Ex. 7 at CHI 2020 ("EthoStream [(the HSIA vendor)] will contract separately with Choice Franchisees, independent of Choice, to provide Services directly to Choice Franchisees as a result of efforts under this Agreement …."). Choice franchised hotels are not required to use any of the "qualified" vendors, and non-qualified HSIA vendors also provide internet access to Choice franchised hotels. *See* Summa Dep. (Ex. 3) at 29:16-30:2.

Linksmart's reliance on Choice's rules and regulations for its franchised hotel properties is equally flawed. First, Linksmart alleges that "Choice mandates that its franchisees must provide" HSIA. SUMF 5. The requirement of HSIA is irrelevant to this case – the inventors acknowledged that they did not invent providing internet access. SUMF 6. Second, the claim that the Choice brand rules and regulations provide that internet access at franchised hotels is conditioned on the guest receiving and accepting a terms of service page before being "redirected to a start page" (SUMF 11) cannot constitute intent to infringe the claimed invention.[3] Indeed, the rules and regulations contained the same provision for internet access –

---

[3] C*f. Black & Decker (US) Inc. v. Catalina Lighting, Inc.*, 953 F. Supp. 134, 140 (E.D. Va. 1997) ("The fact that [the trademark licensor] may have some contractual powers with (continued…)

- 10 -

*i.e.*, first receiving a terms of service and then being "redirected to a start page" – years before Choice first became aware of the patent when it was sued by Linksmart in July 2008.  SUMF 4, 12.

Moreover, the inventors acknowledged that they did not invent redirection generally. SUMF 13.  As a result, the '118 claims cover at most only some types of redirection servers and redirection systems/methods – not every type.  SUMF 14, 15.  Thus, a general requirement for a "redirectional link" or merely indicating that there be a terms of service page before a user is "redirected to a start page" does not demonstrate infringement, much less the requisite intent for inducement by Choice, because there are other possible forms of redirection that would not be infringing – *e.g.*, those admitted to be in the prior art.  This Court has found that "there can be no liability for active inducement when the actions alleged to induce infringement could also lead to noninfringing activity, and there is no encouragement of the infringing activity in particular."  *epicRealm I*, 492 F. Supp. 2d at 639; *see also Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003).[4]

---

respect to [the licensee's] manufacture of the accused products is irrelevant …. [S]ince the record reflects that after [learning of the patent-in-suit] no powers under the Agreement to review or approve the accused products were exercised in any way …. it follows that these contractual powers provide no basis for infringement liability.") (internal citations omitted).

[4]  *See also Fujitsu Ltd. v. Netgear, Inc.*, No. 07-CV-710, 2009 U.S. Dist. LEXIS 85802, at *85-*86 (W.D. Wis. Sept. 18, 2009) ("[Plaintiffs] argu[e] that because the [accused products'] manuals include a discussion of enabling fragmentation, they are circumstantial evidence that customers would actually enable fragmentation …. [A]t most a manual discussing how to enable fragmentation raises hypothetical possibilities of direct infringement.  <u>Plaintiffs must show more than possibilities to establish indirect infringement</u>.") (emphasis added); *cf. Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) ("With respect to a franchisor's liability for the independent infringing acts of its franchisees, we hold that the franchisor may be held accountable only if it intentionally induced its franchisees to infringe another's trademark or if it knowingly participated in a scheme of trademark infringement carried out by its franchisees …. In making these determinations of intent and (continued…)

In *epicRealm I*, this Court held no inducement where the defendant does "not select the process by which the [accused] service is provided or the systems used to carry out the process." *epicRealm I,* 492 F. Supp. 2d at 638. That is precisely the situation here. Neither the vendor agreements nor the rules and regulations specify the process or manner in which any redirection is to be provided, nor the specific systems to be used to carry out the redirection. *See, e.g.,* SUMF 10, 12. As a result, the vendor agreements and the rules and regulations are "indifferent as to the particular process or configuration" that govern any "redirectional link" or "redirection to a start page" – they merely require that there be some such link. *Id.*

Courts have rejected claims of inducement of infringement where – as here – they are premised on generalized accusations of providing a system or service capable of infringing the patent-in-suit. In *Kyocera Wireless*, the defendant Qualcomm had been accused of inducement based on, *inter alia,* "providing customers with the system determination software, training them on implementation of their mobile devices, providing software and firmware upgrades, offering customer support, furnishing promotional and technical documents for the accused MSM chipsets, and recommending that its customers implement battery saving features." *Kyocera Wireless*, 545 F.3d at 1353. Nevertheless, the Federal Circuit ruled there is no inducement of infringement, explaining "the current record falls short of the necessary intent showing for inducement." *Id.* at 1354. The Federal Circuit found that the evidence "evinces, at most, a finding that Qualcomm generally intended to <u>cause acts that produced infringement</u>," and <u>not</u> a "specific intent to <u>cause infringement</u> of [the] patent." *Id.* (emphasis added); *see also Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1275-85 (W.D. Wash.

---

knowledge, a district court should …. decide whether or not the franchisor explicitly or implicitly encouraged the trademark violations.") (internal citations omitted).

2008) (rejecting inducement of infringement claim where defendant sold software capable of infringing uses but there was insufficient evidence that defendant intended to induce its customers to infringe the patent-in-suit); *epicRealm II*, 644 F. Supp. 2d at 822 ("[M]ere knowledge alone of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." (quoting *Warner-Lambert*, 316 F.3d at 1364)); *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1440 (N.D. Ill. 1996) ("Of course, mere knowledge that its customers use its products in the infringing manner does not demonstrate the requisite intent."). Linksmart's evidence in this case falls far short of the evidence that the Federal Circuit rejected in *Kyocera Wireless*.

Accordingly, as a matter of law, Choice is entitled to summary judgment of no indirect infringement.

V. **Conclusion**

For the foregoing reasons, summary judgment should be granted finding no direct or indirect infringement of the asserted claims by Choice.

DATED: August 27, 2010

Respectfully submitted,

/s/ *Michael C. Smith*
Michael C. Smith
Texas Bar No. 900641877
Siebman, Burg, Phillips & Smith, LLP
113 East Austin Street
Marshall, Texas 75670
(903) 938-8900 (office)
(972) 767-4620 (fax)
michaelsmith@siebman.com

Gregory R. Lyons
DC Bar. No. 436071
glyons@wileyrein.com
Kevin P. Anderson

- 14 -

        DC Bar. No. 476504
        kanderson@wileyrein.com
        WILEY REIN LLP
        1776 K Street, N.W.
        Washington, D.C. 20006
        Tel:  (202) 719-7000
        Fax: (202)719-7049

        *Counsel for Choice Hotels International, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via e-mail on this the 27th day of August, 2010.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

          /s/   *Michael C. Smith*
               Michael C. Smith