UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LINKSMART WIRELESS TECHNOLOGY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC., et al. <br><br> Defendants. | Case No. 2:08-cv-00264-DF-CE <br> Case No. 2:08-cv-00304-DF-CE <br> Case No. 2:08-cv-00385-DF-CE <br> Case No. 2:09-cv-00026-DF-CE <br><br> **CONSOLIDATED** |
| AND RELATED COUNTERCLAIMS. | |

**DEFENDANTS' MOTION FOR A STAY PENDING
THE REEXAMINATION OF THE PATENT IN SUIT**[1]

On August 2, 2010 the Patent and Trademark Office ("PTO") issued a Final Office

Action in an *ex parte* reexamination rejecting every claim of the patent at issue in this litigation,

U.S. Patent No. 6,779,118 ("the '118 patent"). In the likely event the rejection stands on appeal,

"issues relating to those claims would no longer need to be litigated in this action." *ICI*

*Uniquema, Inc. v. Kobo Prods., Inc.*, No. 06-2943 (JAP), 2009 WL 4034829, at *2 (D.N.J. Nov.

20, 2009). At a minimum, due to the frequency of claim cancellation or amendment following a

final office action, the final rejection creates "a large amount of uncertainty" regarding the

validity and scope of the claims asserted in this litigation. *Premier Int'l Assocs. LLC v. Hewlett-*

*Packard Co.*, 554 F. Supp. 2d 717, 724 (E.D. Tex. 2008).

---

[1]    This submission is made on behalf of Defendants Aptilo Networks, Inc.; Best Western
International, Inc.; Choice Hotels International Inc.; Cisco Systems, Inc.; EthoStream, LLC;
iBAHN General Holdings Corp.; Intercontinental Hotels Group Resources Inc.; LodgeNet
Interactive Corporation; Marriott International, Inc.; Ramada Worldwide, Inc.; Six Continents
Hotels Inc.; T-Mobile USA, Inc. Choice Hotels International Inc. ("Choice") joins the motion to
the extent any issues remain after the Court rules on Choice's pending summary judgment
motion of non-infringement.

Meanwhile, this litigation also has reached a critical juncture.  As counsel for Plaintiff Linksmart Wireless Technology LLC ("Linksmart") explained to the Court in support of its motion for a two-month stay of the litigation, "[d]espite the proximity of the current fact discovery cutoff, discovery in this case is nowhere near completion."[2]  Rather, a "large amount of discovery remain[s] to be completed" before the close of fact discovery, and the parties have agreed to stay that discovery for 60 days to allow both sides to concentrate on the potential for settlement.  *Id.*  After fact discovery resumes and concludes, the parties will face complex and costly expert discovery, dispositive motions, and pretrial submissions and motions.  Finally, next year, the parties will engage in an expensive trial involving more than ten defendants from different industries, that use different technologies and have different business models.

Recognizing the importance of the present juncture in the litigation timeline, Linksmart sought the two-month stay to avoid "unnecessarily burdening the Court and the parties with the motion practice and costs associated with the close of discovery, pending motions, and opening expert reports," and to focus instead on its attempts to negotiate non-litigation resolutions of its cases against the various defendants.  *Id.*  Defendants concur that the parties should not be forced at this time to "unnecessarily" endure the substantial burdens and costs of this litigation, but defendants base their position on a more fundamental reason:  In the view of the PTO, Linksmart has no valid claims to assert against the defendants—*i.e.*, no valid claims that would justify the litigation demands that Linksmart will, in two months, seek to impose once again on the parties and this Court.  Judicial economy counsels in favor of a stay pending the reexamination.

---

[2]     Linksmart's Unopposed Motion to Amend Docket Control Order for a Temporary Extension to Facilitate Settlement Completion & Negotiations [Dkt. No. 537] ("Linksmart Motion to Amend DCO"), at 1.

## BACKGROUND

In October 2008, an unidentified party requested an *ex parte* reexamination of the '118 patent, the only patent at issue in this litigation. None of the defendants in this case filed the reexamination request. The PTO granted the reexamination based on substantial new questions of patentability and, in September 2009, issued an initial office action rejecting all of the claims of the '118 patent on obviousness grounds. *See* Levine Decl.[3] Ex. 1, *Ex Parte* Reexamination Non-Final Office Action, App. No. 90/009,301 (September 15, 2009). The patentees submitted responses in November 2009 and May 2010 and held an interview with the examiner, but on August 2, 2010, the PTO issued a Final Office Action rejecting all of the claims of the '118 patent as invalid for obviousness. *See* Levine Decl. Ex. 2, *Ex Parte* Reexamination Applicant Remarks/Arguments, App. No. 90/009,301 (November 14, 2009); Ex. 4, *Ex Parte* Reexamination Interview Summary (November 9, 2009); Ex. 5, *Ex Parte* Reexamination Final Office Action, App. No. 90/009,301 (August 2, 2010). In the action, the PTO considered and rejected the patentees' responses to the initial rejection, and stood by the reasoning supporting the initial office action. Every claim asserted by Linksmart in this litigation now stands rejected by the PTO.[4]

There are eleven defendants remaining in this litigation. Linksmart accuses of infringement numerous different products and services of these various defendants, each of which can be used in different ways and have distinct technological differences. Fact discovery is far from complete. When the agreed-upon two-month discovery stay lifts, the parties will

---

[3] "Levine Decl." refers to the Declaration of Noah Levine in Support of Defendants' Motion For a Stay Pending the Reexamination of the Patent In Suit, filed herewith.

[4] The PTO also issued a final rejection of the patentees' application for a continuation patent based on the '118 patent. *See* Levine Decl. Ex. 6, Final Office Action Summary, App. No. 11/645,924 (May 26, 2010).

have substantial fact discovery to complete in a short period of time. Defendants anticipate that the expert discovery to follow will involve more than a dozen experts covering various technical and damages topics. Trial was scheduled for March 2011, but the Court's order amending the docket control order now moves all dates in the case back by 60 days. When trial does occur, the parties anticipate requesting two weeks of trial time because of the number of defendants, products, and services accused.

## ARGUMENT

This Court has recognized that a stay pending reexamination can accomplish several benefits, including the reduction of litigation costs, the potential elimination of any need for complex litigation or trial altogether, and the encouragement of settlement. *See, e.g., Premier Int'l Assocs. LLC*, 554 F. Supp. 2d at 720; *Datatreasury Corp. v. Wells Fargo & Co.*, 2:06-CV-72 (DF), 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006).

A stay is particularly appropriate, and especially likely to achieve these benefits, where, as here, a reexamination proceeding has progressed to the point of a final office action rejecting the claims of the patent in issue. *See, e.g., Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053, 2010 WL 545855, at *1-5 (N.D. Cal. Feb. 11, 2010) (granting stay of claims relating to one asserted patent after final rejection by PTO, notwithstanding two prior denials of request for stay); *ICI Uniqema, Inc.*, 2009 WL 4034829, at *2-3 (D.N.J. Nov. 20, 2009) (finding persuasive that "the PTO has rejected all claims in the '660 patent, and if the claims remain so, issues relating to those claims would no longer need to be litigated in this action"); *NTP, Inc. v. T-Mobile USA, Inc.*, No. 3:07-CV-548, 2007 WL 3254796, at *1-3 (E.D. Va. Nov. 2, 2007) (granting stay after final rejection by PTO); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 216-217 (D. Del. 1991) ("[T]he benefits of imposing a stay until the Board of Patent Appeals has reached a decision outweigh any associated burdens."); *see also L.E.A.*

*Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995) (affirming dismissal without prejudice after final rejection of asserted claims by PTO in reissue proceeding).

This Court considers three factors when deciding whether to stay litigation pending reexamination: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Echostar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-81 (DF), 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006). The analysis essentially reduces to the question of "whether the benefits of a stay outweigh the inherent costs based on these factors." *Constellation IP, LLC v. The Allstate Corp.*, 5:07-CV-132 (LED), 2008 WL 4787625, at *1 (E.D. Tex. 2008); *EchoStar Techs. Corp.*, 2006 WL 2501494, at *1. Each factor favors a stay, and the benefits of a stay outweigh any costs.

## I.   A Stay Will Avoid Duplicative Proceedings and Simplify the Issues In This Litigation—or Eliminate Them Entirely

In granting stays pending reexamination, this Court has noted that "statistics reveal that most reexaminations result in claim amendments or cancellations." *Datatreasury Corp.*, 490 F. Supp. 2d at 755. That likelihood is enhanced here where the PTO has not merely commenced a reexamination, but rather has issued a Final Office Action rejecting every claim of the '118 patent. As a statistical matter, the PTO rejection is substantially likely to stand. The Board of Patent Appeals and Interferences affirms more than 70 percent of *ex parte* reexamination appeals and, in turn, the Federal Circuit affirms the Board in approximately 90 percent of all cases. *See* Levine Decl. Ex. 7, Appeals from the Central Examination Unit at 24; Ex. 8, CAFC Appeals Filed, Terminated, Pending 2006-2009. It is therefore far more probable than not that the dispute in this case will be resolved fully through the reexamination process.

Invalidity has been, and will continue to be, a major issue in this litigation. Claim construction resulted in a decision finding six of the ten asserted claims invalid for indefiniteness and, going forward, a substantial portion of the litigation will concern challenges to the validity of the four remaining asserted claims of the '118 patent. As is true of all patent litigation, the litigation promises to be costly—far more costly than the PTO's efficient resolution of invalidity in its reexamination. For example, as the Federal Judicial Center has noted, "[a] jury trial is very burdensome on the court, the citizens called to jury duty, and the parties." Levine Decl. Ex. 9, Federal Judicial Center, *Patent Case Management Judicial Guide*, at 4-15 (2009). Reexamination proceedings are therefore a preferred forum to first resolve invalidity: the "proceedings in the PTO can often settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases." *Id.* at 2-27 (internal quotation marks and citation omitted). Congress provided for the reexamination process for this very purpose— "efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation." H. Rep. 1307(I), 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Admin. News 6460, 6463; *see also Spa Syspatronic, AG v. Verifone, Inc.*, No. 2:07-CV-416, 2008 WL 1886020, at *3 (E.D. Tex. Apr. 25, 2008) ("A reexamination means courts need not expend unnecessary judicial resource by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers" (internal quotation marks and citation omitted)). Now that the PTO has issued a Final Office Action rejecting every claim of the '118 patent, the reexamination should be allowed to run to completion, consistent with Congress's objective. A stay is especially justified in these circumstances, to avoid the Court and the parties wasting their time, resources, and money "addressing an invalid claim or claims." *EchoStar*

*Technologies Corp.*, 2006 WL 2501494, at *3; *Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp.

2d 440, 442 (D.N.H. 1997) (granting stay pending completion of reexamination process where

PTO had rejected multiple claims).

Even if the reexamination did not result in the cancellation of every claim asserted by

Linksmart, a stay would still avoid duplicative and wasteful proceedings and simplify issues for

any trial here. For example, "[t]he reexamination process usually requires a patent owner to

make claim amendments in order to answer rejections made by the PTO." Levine Decl. Ex. 9,

Federal Judicial Center, *Patent Case Management Judicial Guide*, at 4-16. The cancellation or

amendment of any one of the asserted claims here would narrow and clarify the issues for any

remaining litigation. *See, e.g., Datatreasury*, 490 F. Supp. 2d at 755 ("[a]mended claims also

have the potential for simplifying the issues that need to be litigated"); *EchoStar*, 2006 WL

2501494, at *4 ("[i]f the reexamination proceeding invalidates or narrows a claim or claims, the

issues at trial will be simplified").

## II.   Linksmart Will Not Suffer Any Undue Prejudice or Clear Tactical Disadvantage From a Stay

As noted, Linksmart affirmatively sought and obtained a two-month stay in this litigation

to avoid "unnecessarily burdening the Court and the parties with the motion practice and costs

associated with the close of discovery, pending motions, and opening expert reports." Linksmart

Motion to Amend DCO, at 1. Thus, even Linksmart recognizes the benefits of resolving

disputed issues through means other than litigation, having sought its stay of both litigation

deadlines and the trial date to allow it to seek negotiated solutions with various defendants.[5]

---

[5]   All parties were aware that the available trial dates for this matter fell in either March or October 2011 and, accordingly, that movement of the docket control order dates by two months likely would mean movement of the trial date back by seven months. Linksmart did not protest any such delay; rather, it accepted it by filing its motion.

Linksmart cannot claim that it would suffer any prejudice, much less any undue prejudice, from a similar stay designed to allow instead for the PTO to address invalidity in a non-litigation process that—at this point, given the final rejection—would be more efficient, less costly, and less burdensome than litigation.

By definition, any stay—Linksmart's 60-day stay or a stay pending reexamination—entails time. As a legal matter, however, the time inherent in the reexamination process cannot constitute undue prejudice. *See, e.g., Cameras Onsite, LLC v. Digital Mgmt. Solutions, Inc.*, No. H-09-2518, 2010 WL 1268054, at *3 (S.D. Tex. Mar. 24, 2010); *Ho Keung Tse v. Apple Inc.*, No. C 06-06573, 2007 WL 2904279, at *4 (N.D. Cal. 2007) ("Mere delay, without more though, does not demonstrate undue prejudice."); *Alza Corp. v. Wyeth*, No. 9:06-cv-156, 2006 WL 3500015, at *1 (E.D. Tex. Nov. 21, 2006). There are also special reasons why, in *this* litigation, there is no credible basis for concluding that the time it takes for the reexamination to conclude would cause any *undue* prejudice to Linksmart. Both in the filing and prosecution of this litigation, Linksmart has been content to proceed in a delayed manner. For example, the captive portal technology that Linksmart accuses of infringement has been widely used for many years,[6] yet Linksmart and its parent company (the previous assignee of the '118 patent) waited approximately four years after the '118 patent issued to commence this litigation. Then, once Linksmart did bring the litigation, it did so in a piecemeal manner guaranteed to avoid any sort of rapid resolution. Linksmart filed complaints against the various current defendants over a period

---

[6]    *See, e.g.*, Levine Decl. Ex. 10, Wireless Wizards, *What's the best way to authenticate wireless users?*, Network World (Sept. 6, 2004) ("A common name for this feature is 'Captive Portal.' There are a number of vendors who offer products in this area; there is also open-source software that you can use to build a Web redirection solution."), *available at* http://www.networkworld.com/columnists/2004/0906wizards.html.

of six months spanning from July 2008 to January 2009 in a series of separate lawsuits, and did not seek preliminary injunctive relief in any of the cases.

Similarly, during the litigation, Linksmart has dragged its feet. For example, Linksmart did not notice any fact depositions until July of this year, over two years after commencing the case. In fact, for most defendants, Linksmart waited until August 12, 2010, ten days *after* the PTO's Final Office Action and barely one month before the close of discovery, to notice its *first* fact depositions of those defendants. This is hardly consistent with any assertion by Linksmart that it needs rapid resolution of this litigation to avoid prejudice to its interests. Indeed, to this day, Linksmart continues to bring new litigation to enforce the '118 patent—litigation that, like this case, could have been commenced much earlier if time were of the essence. Just over a month ago, Linksmart commenced another lawsuit in this district based on allegations identical to this suit, naming eighteen new defendants. *See Linksmart Wireless Technology LLC v. TJ Hospitality Ltd., et al.*, Civ. Action No. 02:10-cv-00277 (E.D. Tex. July 29, 2010).

As a mere holder of the '118 patent, and not a practitioner of the invention, there is no reason that the passage of time in a stay pending reexamination would unduly prejudice Linksmart. Linksmart is not a competitor of defendants. Linksmart does not manufacture or sell any products within the scope of the '118 patent, so there is no risk of customer losses or of injury to market share during a stay. *See, e.g., Spa Syspatronic AG*, 2008 WL at 1886020, at *2 (granting stay and citing absence of direct competition in support); *Gioello Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-375 GMS, 2001 WL 125340, at *5-6 (D. Del. Jan. 29, 2001) (granting stay and finding "slight prejudice, if any" where patent owner did not make or sell goods related to patent). In the unlikely event that the asserted claims of the '118 patent survive the reexamination, whether in current or amended form, Linksmart will be no worse off under a stay.

It could still be fully compensated by monetary damages. *See, e.g., Motiva, LLC v. Nintendo Co., Ltd.*, at 3 No. c10-0349RSL (W.D. Wa. June 11, 2010) (Dkt. No. 123) (Levine Decl. Ex. 11); *see also* Levine Decl. Ex. 9, Federal Judicial Center, *Patent Case Management Judicial Guide*, at 4-17 (relevant question for undue prejudice is whether "the patent owner will be sufficiently compensated by money damages if the infringement claim is ultimately successful"). Indeed, having allowed common captive portal technology to flourish unaccused of infringement for four years after the '118 patent issued, Linksmart can hardly claim now, two years into a litigation it has been slow in advancing, that the further passage of time due to a stay would cause any undue prejudice.

Defendants, on the other hand, will be severely prejudiced absent a stay of this litigation. They will be forced to expend significant resources to defend against patent claims that the PTO already has rejected and that the Board is likely to confirm as invalid. Defendants should not be required to run the risk of having a judgment of patent infringement entered against them. Such prejudice to the defendants is completely avoidable.[7]

### III.   Fact Discovery Is Not Complete, Expert Discovery Has Not Yet Commenced, and Trial Is Still At Least Eight Months Away

As Linksmart aptly put it, "Discovery in this case is nowhere near completion." Linksmart Mot. to Amend DCO, at 1-2. There is substantial and expensive fact discovery yet to conduct, including the depositions of many witnesses whose depositions have been noticed but not yet taken. For many defendants, no depositions have yet been taken of any of their

---

[7]   Defendants recognize that this Court sometimes has required, as a condition for a stay, that Defendants enter into a stipulation regarding the use of the art at issue in the reexamination. Defendants would enter into a stipulation like that in *Premier International Associates*, 554 F. Supp. 2d at 725, agreeing not to argue invalidity at trial based on the prior art references relied upon by the PTO in the Final Office Action, but allowing defendants to rely on those references for obviousness in combination with other references not considered in the Final Office Action.

witnesses.  Only one party (Choice) has filed a dispositive motion, and no party has begun the

costly process of expert discovery.  In light of the order granting Linksmart's motion to amend

the docket control order, any potential trial date is at least eight months away (and likely more,

*see supra*, p.7 n.5).  In short, some of the most resource-intensive and expensive tasks in this

litigation still lie ahead.

   As this Court has observed, a stay is strongly favored where, as in this case, there is a

substantial amount of work that still needs to be done before the case is trial ready.  *See, e.g.*,

*EchoStar Techs.*, 2006 WL 2501494, at *4 ("[A]lthough there has been a great deal of activity in

this litigation to date, much remains to be done before the case is ready for trial"); *Constellation

IP*, 2008 WL 4787625, at *3 ("Although there has been some activity in this litigation to date,

much remains to be done before the case is ready for trial. ... [I]ssues that lie ahead in this case

weigh in favor of a stay.").  It is the expense and burdens of the future work to be avoided that

justifies the stay in the first instance.  The fact that some discovery has been conducted to date

provides insufficient justification for expending continued time and expenses on litigation work

that the PTO's reexamination likely will render unnecessary, or will require to be redone due to

claim amendment.  *See, e.g., Cellectis S.A. v. Precision Biosciences, Inc.*, No. 5:08-CV-00119-H,

slip op. at 5 (E.D.N.C. Aug. 31, 2010) (Levine Decl. Ex. 3) (noting that "[t]he fact that

significant resources have been expended to date does not in and of itself justify continued

expenditure of significant resources," and granting stay because "[c]utting off further, and

potentially futile, expenditure of time and resources by both the parties and the Court weighs in

favor of granting a stay even at this stage of the litigation").

   The current juncture of the case is, in fact, a particularly appropriate point in time for the

Court to enter a stay pending the reexamination.  The Federal Judicial Center's *Patent Case*

*Management Judicial Guide* advises that a "middle ground" "wait-and-see approach" may be most appropriate regarding stays pending reexamination:

> By the time the parties finish discovery or substantive motion practice, there may have been some significant events in the re-examination that provide a grounded basis for deciding that trial should be postponed until the conclusion of the re-examination proceeding. In this way, a court need not make a decision solely on the statistics argued by the parties at the outset. ... Instead, the decision whether to stay the case can be based on particularized considerations (*e.g.*, when this re-examination is likely to finish or whether the PTO has accepted or rejected the patent owner's arguments).

Levine Decl. Ex. 9 at 4-16 to 4-17. Here, the reexamination has reached an important and mature point—the PTO has issued the Final Office Action rejecting all claims of the '118 patent as invalid, having considered and rejected the patentees' response to the initial bases for rejection. Likewise, the litigation is at a critical juncture—the most extensive and expensive work remains to be completed, yet there is an increasing likelihood that the PTO reexamination will render that work an unnecessary waste of time and money. The Court has now had the benefit of waiting and seeing how both the reexamination and the litigation have developed. A stay is now appropriate.

## CONCLUSION

For the foregoing reasons, the Court should enter a stay pending the conclusion of the reexamination of the '118 patent.

Dated: September 15, 2010

Respectfully submitted,

By: /s/   Michael E. Richardson
Michael Ernest Richardson
Beck Redden & Secrest - Houston
1221 McKinney
Suite 4500
Houston, TX 77010-2010
713-951-6284
713-951-3720 (fax)
mrichardson@brsfirm.com

William F. Lee
Jonathan Andron
WilmerHale
60 State Street
Boston MA 02109
617-526-6000
617-526-5000 (fax)
william.lee@wilmerhale.com
jonathan.andron@wilmerhale.com

David B. Bassett
Noah Levine
Alexandra McTague
WilmerHale
399 Park Avenue
New York, NY 10022
212-230-8800
212-230-8888 (fax)
david.bassett@wilmerhale.com
noah.levine@wilmerhale.com
alexandra.mctague@wilmerhale.com
*Attorneys for Cisco Systems, Inc. and T-Mobile USA Inc.*

 /s/ Kirk Ruthenberg
Kirk R Ruthenberg
Sonnenschein Nath & Rosenthal, LLP
1301 K Street, NW
Suite 600E
Washington , DC 20005
202/408-6410
Fax: 202/408-6399
Email: kruthenberg@sonnenschein.com
*Attorneys for T-Mobile USA, Inc.*

- 13 -

By: /s/ Mark E. Ungerman
Jennifer Parker Ainsworth
State Bar No. 00784720
WILSON, ROBERTSON
& CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Tel.. 903-509-5000
Fax 903-509-5092

Mark E. Ungerman
Cynthia Lopez Beverage
State Bar No. 00787076
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. 202-887-1500
Fax 202-887-0763
*Attorneys for LodgeNet Interactive Corp.*

By: /s/ John M. Guaragna
John M. Guaragna, Esq.
State Bar No. 24043308
DLA Piper LLP
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Tel. 512-457-7000
Fax 512-457-7001
*Attorneys for Defendants Marriott
International, Inc.,
InterContinental Hotels Group Resources, Inc.,
and Six Continents Hotels, Inc.*

By: */s/ Michael Broaddus*
David J. Burman
LEAD ATTORNEY
  DBurman@perkinscoie.com
Michael D. Broaddus
  MBroaddus@perkinscoie.com
S. Kameron Parvin
  Kparvin@perkinscoie.com
PERKINS COIE LLP
1201 Third Ave., 48th Floor

Seattle, WA 98101
Tel. 206-359-8000
Fax 206-359-9000

Michael E. Jones
   mikejones@potterminton.com
Allen Gardner
   allengardner@potterminton.com
POTTER MINTON
110 N. College 500 Plaza Tower
Tyler, Texas 75702
Tel. 903-597-8311
Fax 903-593-0846 (facsimile)
*Attorneys for iBahn General Holdings Corp.*


By: /s/ Steven L. Wiser
Steven L. Wiser
Theodore J. Koerth
Thorelli & Associates
70 W Madison St., #5750
Chicago, IL 60602
Tel. 312-357-0300
Fax 312-357-0328 (fax)
steve@thorelli.com
ted@thorelli.com


Lawrence Augustine Phillips
Siebman Reynolds Burg & Phillips LLP
300 N Travis St
Sherman, TX 75090-9969
Tel. 903-870-0070
Fax 903-870/0066 (fax)
shmdad@yahoo.com
*Attorneys for Aptilo Networks, Inc.*


  /s/ Dean D. Hunt
Dean D. Hunt
(State Bar No. 10283220)
Michelle Benavides
(State Bar No. 24050275)
1000 Louisiana, Suite 2000
Houston, Texas 77002-5018
Tel. 713-751-1600
Fax 713-751-1717
dhunt@bakerlaw.com

mbenavides@bakerlaw.com

Christine J. Moser
Baker Hostetler
3200 National City Center
1900 East North St
Cleveland, Ohio 44114-3485
Tel. 216-621-0200
Fax 216-696-0740
cmoser@bakerlaw.com
*Attorneys for Ethostream, LLC and*
*Ramada World Wide*

By: /s/ David E. Rogers
David E. Rogers
Squire, Sanders & Dempsey L.L.P.
Two Renaissance Square
40 North Central Ave.
Phoenix, AZ 85004
Phone: (602) 528-4122
Fax: (602) 253-8129
drogers@ssd.com

Christopher M. Joe
Chris.Joe@bjciplaw.com
Brian A. Carpenter
Brian.Carpenter@bjciplaw.com
Buether Joe & Carpenter, LLC
1700 Pacific, Suite 2390
Dallas, TX 75201
Tel. 214-466-1272
Fax 214-635-1828

*Attorneys for Best Western International*

/s/ Michael C. Smith
Michael Charles Smith
Siebman Reynolds Burg Phillips & Smith, LLP
713 South Washington
Marshall, TX 75670
Tel. 903-938-8900
Fax 972-767-4620 (fax)
michaelsmith@siebman.com

Kevin P. Anderson

Greg Lyons
Wiley Rein LLP
1776 K Street NW
Tel. 202-719-7000
Fax 202-719-7049
kanderson@wileyrein.com
glyons@wiley.rein.com
*Attorney for Choice Hotels International*

### Certificate of Conference

I certify that on August 27, 2010, I, Noah Levine, counsel for Cisco and T-Mobile in this litigation, conferred on behalf of all defendants joining in this motion by email and by telephone with Andrew Weiss, counsel for Plaintiff Linksmart Wireless Technologies, to ask whether Linksmart would consent to the relief sought by this motion. I contacted Mr. Weiss again by email on Thursday, September 9, and Friday, September 10, 2010, on behalf of all defendants joining in this motion, to determine whether Linksmart had reached a position on the relief sought herein. Alexandra McTague, also of my law firm and also counsel for Cisco and T-Mobile, conferred on behalf of all Defendants joining in the motion with Mr. Weiss by email and telephone on September 13, 2010, at approximately 3:15 p.m. Eastern time. I then spoke with Mr. Weiss by telephone at approximately 8:45 a.m. Eastern time on Wednesday, September 15, 2010. Mr. Weiss and I conferred in good faith and Mr. Weiss indicated that, at this time, Linksmart opposes the relief sought in the present motion. The good faith discussions have at this time conclusively ended in an impasse, leaving an open issue for the court to resolve.

/s/ Noah A. Levine

### Certificate of Service

I certify that all counsel of record have been served with this Motion for Stay Pending Reexamination and accompanying Declaration and exhibits by ECF.

/s/ Michael Richardson